Newell R. HAYS, Appellant,

v.

FIRST STATE BANK OF DELL CITY, Texas, Appellee.

No. 5634.

Court of Civil Appeals of Texas.

El Paso.

March 25, 1964.

Rehearing Denied April 8, 1964.

Peticolas, Luscombe & Stephens, El Paso, for appellant.

Kemp, Smith, Brown, Goggin & White, James F. Garner, El Paso, for appellee.

FRASER, Chief Justice.

The First State Bank of Dell City, Texas sued one Fred Bogardus and one Jesus P. Holguin on notes executed by them and endorsed by another defendant, Newell R. Hays. There were several notes and one other defendant, but Mr. Hays is the only one to appeal from the judgment of the lower court, which entered judgment for the plaintiff against all of the defendants, including Hays. We will not itemize or further describe the notes, as all of the suits were consolidated, one of the notes was paid, one endorsed by Mr. Hays, and only Mr. Hays appealed from the judgment.

Appellant bases his appeal on the fact that the makers of the notes which he had endorsed had signed new notes which he, the defendant, had refused to endorse. Mr. Hays takes the position that because the plaintiff bank accepted the new notes, he, the appellant, was relieved of any obligation or liability as endorser of the original notes. It is not denied that appellant refused to sign or endorse the new notes, or that the bank took the new notes and entered them on its Note Liability Ledger, with each note having a separate number. The jury found, in answer to Special Issues 21, 22 and 23, that the plaintiff bank did not accept the new notes in lieu of the original notes.

Appellant insists that the extension of a promissory note without the consent of the surety releases the surety, and cites authorities as follows: Red River Nat. Bank v. Bray, 105 Tex. 312, 148 S.W. 290; Brinker v. First Nat. Bank, Tex.Com.App., 37 S.W.2d 136.

However, in the case before us there was a provision in the note as follows:

"The makers, signers and endorsers of this note, severally agree to all extensions * * * before or after maturity without prejudice to the holder * * *"

This provision, we think, disposes of the Red River case, supra; and in the Brinker case one of the two sureties, a Mr. Wear, had died, and the court stated that the relationship of agency perished with the death of Mr. Wear. The agency referred to is that created by the above quoted waiver. Such waiver has been held to make or create for the principal the authority to act as agent for the surety for the purpose of extending the time of payment of a note. Appellant takes the position in the case before us that the agency was terminated when Mr. Hays refused to sign or endorse the new notes.

As stated in the following cases it is a well-established principle of law that the surety is not released from his liability when, in signing the original obligation, he has agreed in advance to any extension of time subsequently granted for the payment of the original obligation. Brinker v. First Nat. Bank (supra); State Nat. Bank v. Vickery, 206 S.W. 841 (Tex.Com.App.).

The court, in the Brinker case, stated as follows:

"Therefore, because of such waiver, the various extensions did not release the parties secondarily liable so long as the waiver clause was in effect, and Turley was authorized to agree with the bank for payment of the debt on some day subsequent to that previously stipulated (National Bank of Commerce v. Kenney, 98 Tex. [293], 300, 83 S.W. 368) and thus bind Wear and Brinker by such agreement of extension (evidenced in this case by new notes signed by him alone), whether known to them or not, and to that extent he represented and acted for them—the relationship of agency was created, but, when that relationship ceased, as it did, at Wear's death, Turley's right to further bind them likewise ceased, and any extensions thereafter made by him were not authorized by the waiver, and, if made without the consent of Brinker and Wear's proper representatives, operated their release. * * *"

We have reached the conclusion that appellant's points must be overruled and the judgment of the trial court affirmed. The appellant did sign the original notes, with the above-quoted waiver, which notes have never been marked canceled or destroyed. It has been held that where renewal notes are involved, the holder may sue either on the renewal note or on the original note. Chapman v. Crichet, 127 Tex. 590, 95 S.W.2d 360; Kern v. Smith, Tex.Civ.App., 164 S.W.2d 193.

This suit was brought on the original notes. We do not find that the trial court should have declared, as a matter of law, that the new notes had extinguished the old notes, or were taken in lieu of the original notes. The record shows that Mr. Charles Thomas, President of the appellee bank, testified that new loan numbers were assigned to each of the renewal notes and that each renewal note had been entered in its customers' Liability Ledger. However, Mr. Thomas went on to testify that the original notes sued on here were not marked "Paid", nor were they returned to the makers; but, on the contrary, were retained in the bank files, and that in each case there was no intention on the part of the bank to discharge or cancel the original notes. The trial court apparently felt this matter constituted fact issues and therefore submitted same to the jury. The jury found, as stated above, that the new notes were not taken in lieu of the original notes.

Appellant appears to take the position that the new notes, in each case, had the effect of novation, but we do not believe the authorities sustain his position. As a matter of practicality, it is difficult to assign any reason as to why the bank here would have taken new notes and deliberately released the endorser, as it must be presumed it had some reason for asking Mr. Hays to endorse the notes in the first place, such reason probably being one of credit. It is difficult to find any consideration moving to the bank in taking the new notes without the guarantee or suretyship of Mr. Hays with the intention of releasing Mr. Hays from his obligation on the original notes. It has been held that to create a novation, the intent so to do and the agreement creating such novation must be clearly established. We do not feel that the intent to create a novation, or any agreement creating a novation was sufficiently or clearly established in this case. As a matter of fact the trial court submitted to the jury special issues inquiring as to whether or not the new notes were taken in lieu of the old notes, and the jury—as triers of the facts

involved—held against the appellant, saying that the new notes were not taken in lieu of the old notes. Cooper Grocery Co. v. Strange, 18 S.W.2d 609 (Tex.Com.App.); Frost v. First State Bank & Trust Co., 276 S.W. 222 (Tex.Com.App.); Naylor v. Anderson, Tex.Civ.App., 178 S.W. 620 (n. w. h.).

For the reasons stated above, and based on the above authorities, it is our holding that the decision of the trial court was correct, based, as it was, on the findings of the jury and the express waiver hereinbefore quoted. We do not believe that the refusal of appellant to sign or endorse the new notes revoked the agency he created as endorser of the original notes containing the waiver above set out.

We therefore overrule all of appellant's points of error and affirm the judgment of the trial court.